AO 106 (Rev. 7/87) Affidavit for Search Warrant

REDACTED

# United States District Court

_____ DISTRICT OF _Delaware_ _____

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒
Newark, DE 19702, described more
particularly on Attachment A

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

CASE NUMBER:   05-88 M

I ____ Anthony H. Crabtree _____ being duly sworn depose and say:

I am a(n) FBI Special Agent _____ and have reason to believe
                            Official Title

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

▒▒▒▒▒▒▒▒▒▒ Newark, DE 19702, described more particularly above

in the _____ District of _Delaware_ _____
there is now concealed a certain person or property, namely (describe the person or property to be seized)

        see Attachment  B

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
     contraband and evidence of a crime

concerning a violation of Title __18__ United States code, Section(s) __2252__
The facts to support a finding of Probable Cause are as follows:

     see attached affidavit

Continued on the attached sheet and made a part hereof.    ☒ Yes  ☐ No

_SA. Anthony H. Crabtree_
Signature of Affiant
SA Anthony H. Crabtree, FBI

Sworn to before me, and subscribed in my presence

_June 2, 2005_ _____    at    Wilmington, DE
Date                                  City and State

Honorable Mary Pat Thynge
United States Magistrate Judge
Name and Title of Judicial Officer          Signature of Judicial Officer

## ATTACHMENT A
## LOCATION TO BE SEARCHED

The location █████████████████ Newark, Delaware is a single family home, with a red brick exterior, blue shudders, tan front door and the numbers ████ is displayed on the mail box in front of the house.

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

1.    Computer(s), computer hardware, computer software, computer related documentation, computer passwords and data security devices, videotapes, video recording devices, video recording players, and video display monitors that may be, or are used to:  visually depict child pornography or child erotica; display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess, or receive child pornography, child erotica, or information pertaining to an interest in child pornography or child erotica.

2.    Any and all computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs, including, but not limited to, P2P software.

3.    Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes pertaining to the possession, receipt, or distribution of child

27

pornography as defined in 18 U.S. C. § 2256(8) or to the
possession, receipt or distribution of visual depictions of
minors engaged in sexually explicit conduct as defined in 18
U.S. C. § 2256(2).

4.     In any format and medium, all originals, computer
files, copies, and negatives of child pornography as defined
in 18 U.S.C. § 2256(8), visual depictions of minors engaged in
sexually explicit conduct as defined in 18 U.S.C. § 2256(2),
or child erotica, including but not limited to the following
computer files:

        a. Pthc-collection of pedo pics046 (1).jpg (Image
depicts a female child, approximately seven years old
performing oral sex on a male individual).

        b. pedo Collection 07-Real Child Porn!!!(illegal
preteen underage lolita kiddy incest little girl rape anal cum
sex lesbian blowjob gay ddoggrpn)(2).jpg (A series of fourteen
images depicting children, between the ages of seven and
fifteen, having intercourse and performing oral sex on male
individuals).

        c. Collection 13-Real Child Porn!!!(illegal preteen
underage lolita kiddy incest little girl rape anal cum sex
lesbian blowjob) (1).jpg (A series of fourteen images
depicting children, between the ages of seven and fourteen,

28

having intercourse and performing oral sex on male individuals).

d. collection 5... rape 2 THIS IS SICK... illegal preteen underage lolita kiddy child incest xxx porn gay qwerty fuck young.jpg (A series of fourteen images depicting children between the ages of five and fourteen having intercourse and performing oral sex on male individuals).

e. PEDO lsm-006-097 !! new keyword -kdquality-kiddy lolita childfugga childlover pthc hussyfan lolitaguy kidzilla ddoggprn r@ygol.jpg.jpg (One image depicting two females approximately nine years of age, lying on the bed without clothes and their legs spread apart).

5.     Any and all diaries, address books, names, and lists of names and addresses of individuals who may have been contacted by use of the computer or by other means for the purpose of distributing or receiving child pornography as defined in 18 U.S.C. § 2256(2).

6.     Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes), identifying persons transmitting, through interstate or foreign commerce by any means, including, but not limited to,

29

by the United States Mail or by computer, any child
pornography as defined in 18 U.S.C. § 2256(8) or any visual
depictions of minors engaged in sexually explicit conduct, as
defined in 18 U.S.C. § 2256(2).

7.   Any and all notes, documents, records, or
correspondence, in any format or medium (including, but not
limited to, envelopes, letters, papers, e-mail messages, chat
logs and electronic messages, other digital data files and web
cache information) concerning the receipt, transmission, or
possession of child pornography as defined in 18 U.S.C. §
2256(8) or visual depictions of minors engaged in sexually
explicit conduct, as defined in 18 U.S.C. § 2256(2).

8.   Any and all notes, documents, records, or
correspondence, in any format or medium (including, but not
limited to, envelopes, letters, papers, e-mail messages, chat
logs and electronic messages, and other digital data files)
concerning communications between individuals about child
pornography or the existence of sites on the Internet that
contain child pornography or that cater to those with an
interest in child pornography.

9.   Any and all notes, documents, records, or
correspondence, in any format or medium (including, but not
limited to, envelopes, letters, papers, e-mail messages, chat

30

logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

10. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters papers, e-mail messages, chat logs and electronic messages, and other digital data files) that concern accounts with an Internet Service Provider.

11. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

12. Any and all cameras, film, videotapes or other photographic equipment.

13. Any and all visual depictions of minors that may be connected to other visual depictions of minors engaging in sexual explicit conduct.

14. Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

15. Any and all documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to occupancy or ownership of the premises described above, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, mail envelopes, or addressed correspondence.

16. Any and all diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually

32

explicit conduct, as defined in 18 U.S.C. § 2256(2).

17.  Any and all indicia of possession and use of the
computer located at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮, Newark, Delaware,
(including, but not limited to, Internet Provider subscriber
records, correspondence, e-mail messages, email headers, email
accounts information, chat logs, screen names, buddy lists,
electronic messages, web cache information, employment
records, rental or lease agreements, and rental or lease
payments).

33

**THE UNITED STATES DISTRICT COURT FOR THE**

**DISTRICT OF DELAWARE**

Case No.  05-88 M

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Anthony H. Crabtree, a Special Agent (SA) with the
Federal Bureau of Investigation (FBI), Baltimore Division,
Wilmington, Delaware Resident Agency, being duly sworn, depose
and state as follows:

1. I have been employed as a Special Agent of the FBI
since December 1, 2002, and am currently assigned to the
Baltimore Division, Wilmington, Delaware Resident Agency.
Since joining the FBI, I have been involved in the
investigation of violent crimes, white collar crimes, and
terrorism activity. Since January 2004, I have been assigned
to investigate Crimes Against Children that include Sexual
Exploitation of Children (SEOC) violations of federal law. I
have gained expertise in the conduct of such investigations
through training in seminars, classes, and everyday work
related to conducting these types of investigations. I have
attended FBI Crimes Against Children Training as well as

1

training in the Innocent Images National Initiative Undercover
Internet Training.

    2.    As a federal agent, I am authorized to investigate
violations of laws of the United States and to execute
warrants issued under the authority of the United States.

    3.    I am investigating the activities of a computer
having internet connection with a service and billing address
of █████████████, Newark, Delaware 19702.  As will be
shown below, there is probable cause to believed that someone
using a computer at the above listed address has received,
possessed, and/or transmitted child pornography, in violation
of Title 18, United States Code, Section 2252.  I am
submitting this Affidavit in support of a search warrant
authorizing a search of the residence located at █████████
███████, Newark, Delaware 19702, ( the "Premises"), for
the items specified in Attachment A hereto, which items
constitute violations.  Said Premises is more particularly
described in paragraph 33 below. I am requesting authority to
search the entire Premises, including the residential dwelling
and any computer and computer media located therein where the
items specified in Attachment A may be found, and to seize all
items listed in Attachment A as instrumentalities, fruits and
evidence of crime.

2

4.    All information contained in this affidavit is either personally known to the affiant or has been related to the affiant by other Special Agents of the Federal Bureau of Investigation. Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violation of Title 18, United States Code, Sections 2252, are presently located at 129 East Elgin Court, Newark, Delaware 19702.

## STATUTORY AUTHORITY

5.    This investigation concerns alleged violation of Title 18, United States Code, Sections 2252, relating to material involving the sexual exploitation of minors.  18 U.S.C. Section 2252(a) prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any visual depiction of minors engaging in sexually explicit conduct when such visual depiction was either mailed, shipped or transported in interstate or foreign commerce by any means, including by computer, when such visual depiction was produced using materials that had traveled in interstate or foreign commerce.

3

## DEFINITIONS

6.    The following definitions apply to this Affidavit
and Attachment A to this Affidavit:

a.    "Child Erotica," as used herein, means materials
or items that are sexually arousing to persons having a sexual
interest in minors but that are not, in and of themselves,
obscene or that do not necessarily depict minors in sexually
explicit poses or positions.

b.    "Child Pornography," as used herein, includes
the definition in 18 U.S.C. Section 2256(8) (any visual
depiction of sexually explicit conduct where (a) the
production of the visual depiction involves the use of a minor
engaged in sexually explicit conduct, or (b) the visual
depiction is a digital image, computer image. or computer-
generated image that is, or is indistinguishable from, that of
a minor engaged in sexually explicit conduct, or (c) the
visual depiction has been created, adapted, or modified to
appear that an identifiable minor is engaged in sexually
explicit conduct), as well as any visual depiction, the
production of which involves the use of a minor engaged in
sexually explicit conduct (see 18 U.S.C. Sections 2252 and
2256(2)).

4

c.      "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. Section 2256(5).

d.      "Sexually explicit conduct," means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. See 18 U.S.C. Section 2256(2).

e.      " Computer," as used herein, is defined pursuant to 18 U.S.C. Section 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."

f.      "Computer hardware," as used herein, consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks,

5

external hard drives, floppy disk drives and diskette, and
other memory storage devices); peripheral input/output devices
(including, but not limited to, keyboards, printers, video
display monitors, and related communications devices such as
cables and connections), as well as any devices, mechanisms,
or parts that can be used to restrict access to computer
hardware (including, but not limited to, physical keys and
locks).

      g.   "Computer software," as used herein, is digital
information which can be interpreted by a computer and any of
its related components to direct the way they work. Computer
software is stored in electronic, magnetic, or other digital
form. It commonly includes programs to run operated systems,
applications, and utilities.

      h.   "Computer-related documentation," as used
herein, consists of written, recorded, printed, or
electronically stored material which explains or illustrates
how to configure or use computer hardware, computer software,
or other related items.

      i.   "Computer passwords and data security devices, "
as used herein, consist of information or items designed to
restrict access to or hide computer software, documentation,
or data. Data security devices may consist of hardware,

6

software, or other programming code. A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

j.     "Internet Protocol address" or "IP address," refers to a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet.  IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

k.     The term "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means.  Whether in handmade form (including, but not limited to, writing,

7

of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains peer to peer software, when the computer was sharing files, and some of the files which were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data.

14. A growing phenomenon on the Internet is peer to peer file sharing (P2P). P2P file sharing is a method of communication available to Internet users through the use of special software. Computers linked together through the Internet using this software form a network that allows for the sharing of digital files between users on the network. A user first obtains the P2P software, which can be downloaded from the internet. In general, P2P software allows the user to set up file(s) on a computer to be shared with others running compatible P2P software. A user obtains files by opening the P2P software on the user's computer, and conducting a search for files that are currently being shared

11

on the network.  LimeWire, one type of P2P software, sets up

its searches by keyword.  The results of the keyword search

are displayed to the user.  The user then selects file(s) from

the results for download.  The download of a file is achieved

through a direct connection between the computer requesting

the file and the computer containing the file.

15. For example, a person interested in obtaining child

pornographic images would open the P2P application on his/her

computer and conduct a search for files using a term such as

"preteen sex."  The search is sent out over the network of

computers using compatible P2P software.  The results of the

search are returned to the user's computer and displayed.  The

user selects from the results displayed the file(s) he/she

wants to download.  The file is downloaded directly from the

computer hosting the file.  The downloaded file is stored in

the area previously designated by the user.  The downloaded

file will remain there until moved or deleted.

16.  One of the advantages of P2P file sharing is that

multiple files may be downloaded in parallel.  This means that

the user can download more than one file at a time.  In

addition, a user may download parts of one file from more than

one source computer at a time.  For example, a Limewire user

downloading an image file may actually receive parts of the

image from multiple computers.  The advantage of this is that
it speeds up the time it takes to download the file.  Often,
however, a Limewire user downloading an image file receives
the entire image from one computer.

17.  A P2P file transfer is assisted by reference to an
Internet Protocol (IP) address.  This address, expressed as
four numbers separated by decimal points, is unique to a
particular computer during an online session.  The IP address
provides a unique location making it possible for data to be
transferred between computers.

18.  Third party software is available to identify the IP
address of the P2P computer sending the file and to identify
if parts of the file came from one or more IP addresses.  Such
software monitors and logs Internet and local network traffic.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

19.  Searches and seizures of evidence from computers
commonly requires agents to download or copy information from
the computers and their components, or seize most or all
computer items (computer hardware, computer software, and
computer related documentation) to be processed later by a
qualified computer expert in a laboratory or other controlled
environment.  This is almost always true because of the
following:

13

a.    Computer storage devices (like hard disks,
diskettes, tapes, laser disks, magneto opticals, and others)
can store the equivalent of thousands of pages of information.
Especially when the user wants to conceal criminal evidence,
he or she often stores it in random order with deceptive file
names.   This requires searching authorities to examine all the
stored data to determine whether it is included in the
warrant.   This sorting process can take days or weeks,
depending on the volume of data stored, and it would be
generally impossible to accomplish this kind of data search on
site; and

b.    Searching computer systems for criminal evidence
is a highly technical process requiring expert skill and a
properly controlled environment.   The vast array of computer
hardware and software available requires even computer experts
to specialize in some systems and applications, so it is
difficult to know before a search which expert should analyze
the system and its data.   The search of a computer system is
an exacting scientific procedure which is designed to protect
the integrity of the evidence and to recover even hidden,
erased, compressed, password-protected, or encrypted files.
Since computer evidence is extremely vulnerable to tampering
or destruction (which may be caused by malicious code or

14

normal activities of an operating system), the controlled
environment of a laboratory is essential to its complete and
accurate analysis.

    20.   In order to fully retrieve data from a computer
system, the analyst needs all magnetic storage devices as well
as the central processing unit (CPU).   In cases involving
child pornography where the evidence consists partly of
graphics files, the monitor(s) may be essential for a thorough
and efficient search due to software and hardware
configuration issues.   In addition, the analyst needs all the
system software (operating systems or interfaces, and hardware
drivers) and any applications software which may have been
used to create the data (whether stored on hard drives or on
external media.)

    21.   Finally, there is probable cause to believe that the
computer and its storage devices, the monitor, keyboard, and
modem are all instrumentalities of the crime(s), within the
meaning of 18 U.S.C. §§ 2251 through 2256, and should all be
seized as such.

### SEARCH METHODOLOGY TO BE EMPLOYED

    22.   The search procedure of electronic data contained in
computer hardware, computer software, and/or memory storage
devices may include the following techniques (the following is

15

a non-exclusive list, as other search procedures may be used):

a. examination of all of the data contained in such computer hardware, computer software, and /or memory storage devices to view the data and determine whether that data falls within the items to be seized as set forth herein;

b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

c. surveying various file directories and the individual files they contain;

d. opening files in order to determine their contents;

e. scanning storage areas;

f. performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment A; and/or

16

g. performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment A.

## CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

23. Affiant has been informed that FBI Supervisory Special Agent (SSA) James T. Clemente has worked in the Behavioral Analysis Unit of the FBI since 1998. SSA Clemente has been a Special Agent with the FBI since 1987. As a member of the Behavioral Analysis Unit, SSA Clemente consults on child exploitation cases throughout the United States, South America, and certain European and African countries. Since 1998, he has received three Exceptional Performance Awards from the Department of Justice and a Superior Service Award from the FBI. In addition, he has received numerous letters of commendation from state, federal, and local law enforcement in connection with his work in the Behavioral Analysis Unit.

24. SSA Clemente's training has involved a significant number of specialized courses in the area of child exploitation, including, but not limited to the following: Innocent Images On-Line Sex Crimes Against Children; National Crimes Against Children; On-Line Sex Crimes Against Children; Clinical Forensic Psychology; Behavioral Analysis of Violent Crime; Missing and Exploited Children Seminar; Research

17

Methodologies; MO, Ritual & Signature Advanced Seminar; and Criminology. In addition, he has mentored under, worked with, studied the articles of, and taught with Kenneth V. Lanning, a Supervisory Special Agent, FBI (retired as of October, 2000). SSA Lanning has over the past 27 years authored numerous articles on the topic of sexual victimization of children and behavioral analysis of child molesters. His work forms the basis of the behavioral analysis performed by the FBI in child exploitation cases.

25.    SSA Clemente has assisted in the writing of numerous search warrant affidavits and has testified as an expert witness in federal court in the areas of child sex offender behavior, child sexual victimology and child pornography. He has given over 100 presentations and lectures to local, state and federal law enforcement agencies, prosecutors, and health care professional throughout the United States on various topics related to child exploitation, including, but not limited to the following topics: Behavioral Analysis of Child Sex Crimes Offenders, On-Line Sex Crimes Against Children, and Equivocal Death Investigations.

26.    As a member of the Behavioral Analysis Unit, SSA Clemente has analyzed and consulted on between one and two hundred child sexual exploitation and victimization cases a

18

year.  His analyses are based on all available evidence,
including chat records, image collection analysis, collection
themes, possession of erotica, possession of sexual
paraphernalia, fantasy literature and writings, other relevant
acts, and background information.  The vast majority of the
cases he has analyzed have involved either Preferential or
Situational Sex Offenders.  His role in these cases has varied
as follows:  analyzing investigative results for the purpose
of making investigative suggestions, providing interview
strategies for subjects and victims, and consulting with
local, state and federal prosecutors on trial strategies.  In
addition, SSA Clemente has interviewed between 80 and 100
offenders himself.  A behavioral assessment is not a clinical
diagnosis; rather, it is a law enforcement tool used to
identify and predict offender behavior.

          27.  SSA Clemente has advised agents with the FBI of the
following traits and characteristics that are generally found
to exist and be true in cases involving individuals who
collect child pornography:

          a.  The majority of individuals who collect child
pornography are persons who have a sexual attraction to
children.  They receive sexual gratification and satisfaction
from sexual fantasies fueled by depictions of children that

are sexual in nature.

      b.   The majority of individuals who collect child pornography collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification.  The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel their deviant sexual fantasies involving children.

      c.   The majority of individuals who collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support.  This contact also helps these individuals to rationalize and validate their deviant sexual interest and associated behavior.  The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, P2P, e-mail, e-mail groups, bulletin boards, IRC, newsgroups, instant messaging, and other similar vehicles.

      d.   The majority of individuals who collect child

20

pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children, justifying those feelings and finding comfort for their illicit behavior and desires. Such individuals rarely destroy these materials because of the psychological support they provide.

e.  The majority of individuals who collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests.  These contacts are maintained as a means of personal referral, exchange or commercial profit.  These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

f.  The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials.

**BACKGROUND OF THE INVESTIGATION**

21

28.   On April 15, 2005, Special Agents of the New Orleans Division of the FBI, using an internet connected computer, conducted an undercover session and downloaded child pornography from the user of the LimeWire P2P software. Special Agents conducted a keyword search using the term "childfugga." Agents viewed the results of the search and observed multiple files available to be viewed and downloaded by others at the Internet Protocol (IP) Address ███████████ The files downloaded had the following names and are briefly described by your Affiant:

a. Pthc-collection of pedo pics046 (1).jpg (Image depicts a female child, approximately seven years old performing oral sex on a male individual).

b. pedo Collection 07-Real Child Porn!!! (illegal preteen underage lolita kiddy incest little girl rape anal cum sex lesbian blowjob gay ddoggrpn) (2).jpg (A series of fourteen images depicting children, between the ages of seven and fifteen, having intercourse and performing oral sex on male individuals).

c. Collection 13-Real Child Porn!!! (illegal preteen underage lolita kiddy incest little girl rape anal cum sex lesbian blowjob) (1).jpg (A series of fourteen images depicting children, between the ages of seven and fourteen,

having intercourse and performing oral sex on male

individuals).

    d. collection 5... rape 2 THIS IS SICK... illegal preteen

underage lolita kiddy child incest xxx porn gay qwerty fuck

young.jpg (A series of fourteen images depicting children

between the ages of five and fourteen having intercourse and

performing oral sex on male individuals).

    e. PEDO lsm-006-097 !! new keyword -kdquality-kiddy

lolita childfugga childlover pthc hussyfan lolitaguy kidzilla

ddoggprn r@ygol.jpg.jpg (One image depicting two females

approximately nine years of age, lying on the bed without

clothes and their legs spread apart).

    29.  Since the LimeWire program does not provide a tool

to identify the IP address sending the files, Agents used a

tool named Commview to confirm that the files were obtained

completely from a single IP address.  Commview is commercially

available software for monitoring internet and local network

traffic.  In addition to multiple other functions, Commview

allows the user to view detailed IP connection statistics.  An

analysis of the Commview logs was conducted and it was

determined that all the images were sent from IP address

68.60.235.217.

    30.  A search of the American Registry for Internet

23

Numbers (ARIN) online database indicated that the IP address [redacted] is registered to the Internet Service Provider Comcast Cable Communication, Inc. According to ARIN's website, ARIN is described as a nonprofit organization responsible for managing the Internet numbering resources for North America, a portion of the Caribbean, and sub-equatorial Africa. Results from an administrative subpoena sent to Comcast Cable Communication, Inc. for the date and time the images were downloaded, revealed that the IP address was assigned to the account number subscriber listed as [redacted], Newark, Delaware 19702. The results further revealed that [redacted], or someone having access to his computer, was logged on between 12:35 p.m. Central Daylight Savings Time and 12:46 p.m. on April 15, 2005.

31. a. The FBI has searched various record databases for information about [redacted]. Delaware State Department of Motor Vehicle's records for [redacted] indicate an address of [redacted], Newark, Delaware, Social Security Number [redacted], and Date of Birth [redacted]

b. On May 10, 2005, a request was issued to the United States Postal Inspection Service, requesting mailing information for [redacted], Newark, Delaware 19702.

The results of the request verified that mail is being

delivered to █████████████████████████████, Newark,

Delaware 19702.

    32.  On May 19, 2005, Affiant observed the residence

located at █████████████████, Newark, Delaware, and it is

accurately described in paragraph 33 below.

### DESCRIPTION OF THE PREMISES TO BE SEARCHED

    33.  The location █████████████████, Newark, Delaware

is a single family home, with a red brick exterior, blue

shudders, tan front door and the numbers ████ is displayed on

the mail box in front of the house.

### CONCLUSION

    34.  Based on the aforementioned factual information,

your affiant respectfully submits that there is probable cause

to believe that an individual who resides at the residence

described above is involved in transmitting child pornography.

Your affiant respectfully submits that there is probable cause

to believe that an individual with access to the computer

located in the residence described above has violated 18

U.S.C. §§ 2252.  Additionally, there is probable cause to

believe that evidence of the commission of criminal offenses,

namely, violation of 18 U.S.C. §§ 2252, is located in the

residence described above, and this evidence, listed in

25

Attachment B to this affidavit, which is incorporated herein by reference, is contraband, the fruits of crime, or things otherwise criminally possessed, or property which is or has been used as the means of committing the foregoing offenses.

35.  Your affiant, therefore, respectfully requests that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment A and B.

_SA. Anthony H. Webster_

Special Agent

Federal Bureau of Investigation


Sworn and subscribed before me

this __2__ day of _June_


UNITED STATES MAGISTRATE JUDGE

26